NOT FOR PUBLICATION                                                                    (Doc. No. 50)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| THE UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF PRO-SPEC PAINTING, INC. | |
| Plaintiff, | Civil No. 09-533 (RBK/AMD) |
| v. | **OPINION** |
| PARSONS EVERGREENE, LLC, ZURICH AMERICAN INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, AND FIDELITY AND DEPOSIT COMPANY OF MARYLAND | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Parsons Evergreene, Zurich American Insurance Company, Federal Insurance Company, and Fidelity Deposit Company of Maryland ("Defendants") to enforce a settlement agreement allegedly entered into with Pro-Spec Painting, Inc., a/k/a PSP ("Plaintiff"). Defendants have shown that a settlement agreement was entered into between the parties, and that Plaintiff has not shown any compelling circumstances demonstrating why the settlement should not be enforced. Therefore, the Court grants Defendants' motion and Plaintiff is ordered to sign the agreement releasing his claim against Defendants. Defendants' request for costs and counsel fees is denied.

**I. BACKGROUND**

1

This matter arises from a construction project wherein Plaintiff entered into a subcontract agreement with Defendants to provide certain painting and wall-covering services in exchange for a stipulated contract sum. Def. Br. 1. Subsequently, Defendants terminated the contract, alleging that Plaintiff failed to perform the services, which led Plaintiff to initiate this action against Defendants. Id.

The parties appeared before the Honorable Ann Marie Donio, U.S.M.J., on December 2, 2011. David S. Makara, Esq., and PSP president Ronald Yarborough[1] appeared on behalf of Plaintiff. Cert. of Denis Serkin, Esq., ¶ 3. Denis Serkin, Esq., appeared on behalf of Defendants, with a Parsons corporate representative available by phone. Id.

Although a final settlement agreement was not signed at the conference, Plaintiff represented through its counsel that it would release all claims if Defendants paid Plaintiff a sum of $180,000. Cert. of Denis Serkin, Esq., ¶ 5. Attorney Serkin certifies that on or about December 6, 2011, he represented to Attorney Makara that Parsons would settle for $180,000, and requested that Attorney Makara prepare the agreement and mutual release. Cert. of Denis Serkin, Esq., ¶ 5.

On December 8, 2011, the offices of Attorney Makara emailed the proposed settlement agreement to Attorney Serkin, which provided for a settlement amount of $180,000 to be paid by December 23, 2011. Cert. of Denis Serkin, Esq., ¶ 6, Cert. of Denis Serkin, Ex. A (Email from Tracy Spencer (staff to Plaintiff's attorney) to Denis Serkin, Esq. (attorney for Defendants) (Dec. 8, 2011)). Attorney Serkin sent a revised settlement agreement to Attorney Makara on

---

[1] The parties dispute whether PSP president Ronald Yarborough was in fact present at the initial settlement conference on December 2, 2011. The Court does not consider this question relevant to Plaintiff's enforcement motion.

December 13, which modified the release terms. Cert. of Denis Serkin, Esq., ¶ 7; see Cert. of Denis Serkin, Ex. B  (Email from Attorney Serkin to Attorney Makara and revised settlement agreement (Dec. 13, 2011)).  The following day, Attorney Makara responded: "The revised agreement looks fine.  Call me when you can to discuss timing of payment." Cert. of Denis Serkin, Ex. C (Email from Attorney Makara to Attorney Serkin (Dec. 13, 2011)).  Attorney Serkin certifies that he and Attorney Makara subsequently discussed payment by telephone. Cert. of Denis Serkin, Esq., ¶ 9.

On December 15, 2011, Attorney Serkin emailed Attorney Makara a third version of the settlement agreement. Cert. of Denis Serkin, Ex. D.  Attorney Makara returned the signed agreement with changes regarding the payment date and payroll reporting obligations under the Davis-Bacon Act (40 U.S.C.A. § 3141 et seq.)[2] that appear to be handwritten by PSP president Ronald Yarborough.  Cert. of Denis Serkin, Ex. E.  The email containing the signed agreement included a forwarded message from Mr. Yarborough to Attorney Makara, which stated, "I made the two changes we discussed." Id.  Attorney Serkin alleges that these changes were not discussed with him prior to his receipt of the agreement.  Cert. of Denis Serkin, Esq., ¶ 11.

Attorney Serkin certifies that he and Attorney Makara continued to discuss the changes related to the Davis-Bacon Act from December 17-23, 2011.  Cert. of Denis Serkin, Esq., ¶ 13. On December 23, 2011, Attorney Serkin emailed a fifth version of the agreement to Attorney Makara that eliminated the certified payroll provision, as modified in the prior version by Mr.

---

[2] The Davis-Bacon and Related Acts apply to contractors and subcontractors performing federally funded or assisted contracts in excess of $2,000 for the construction, alteration, or repair (including painting and decorating) of public buildings or public works.  Contractors and subcontractors must pay their laborers and mechanics employed under the contract no less than the locally prevailing wages and fringe benefits for corresponding work on similar projects in the area.  U.S. Department of Labor - Wage and Hour Division (WHD) - Davis-Bacon and Related Acts, http://www.dol.gov/whd/govcontracts/dbra.htm (last visited July 9, 2012).  The Act also requires that subcontractors report their payrolls.  Plaintiff removed these provisions from the agreement on December 17, 2011.

3

Yarborough, and added a provision retaining Plaintiff's obligations to third parties. Cert. of Denis Serkin, Ex. F. The same day, Attorney Serkin sent a letter to Judge Donio advising her that the parties had agreed on a settlement figure, but were still revising the language related to the Davis-Bacon Act. Cert. of Denis Serkin, Ex. G.

Attorney Serkin certifies that on December 27, 2011, Attorney Makara advised him the revised settlement agreement was acceptable and would be signed. Cert. of Denis Serkin, Esq., ¶ 16. Plaintiff does not contest Defendants' assertion. Attorney Serkin confirmed this conversation in an email, and sent another email inquiring about the status of the signature on December 30, 2011. Cert. of Denis Serkin, Exhibits H and I (Emails from Attorney Serkin to Attorney Makara (Dec. 27, 2011, Dec. 30, 2011)). Attorney Serkin's December 27 email stated, in pertinent part:

> Based on our teleconference[,] it is my understanding that your client has agreed to the revised language in the settlement agreement. To that end[,] please provide the signed agreement as soon as possible. As soon as I receive the signed agreement I will contact my client about settlement funds.

Id.

On December 31, 2011, Attorney Makara replied to the December 27 and 30 emails, stating, without further explanation, that his client would not sign the agreement. Cert. of Denis Serkin, Ex. J (Email from Attorney Makara to Attorney Serkin (Dec. 30, 2011)). Plaintiff states in his Memorandum that the agreement was not signed due to the language retaining Plaintiff's obligations to third parties. Pl. Mem. of Law ¶ 5. Attorney Serkin wrote a letter to Judge Donio on January 3, 2012, informing her of Plaintiff's withdrawal. Cert. of Denis Serkin, Ex. K.

Both parties appeared before Judge Donio on January 12, 2012 via teleconference wherein Defendants were granted leave to file a motion to enforce settlement. Cert. of Denis Serkin, Esq., ¶ 21.

Attorney Serkin certifies that on January 13, 2012 he received a telephone call from Attorney Makara advising that Plaintiff would settle for $213,000. Cert. of Denis Serkin, Esq., ¶ 22. Additionally, Attorney Serkin certifies that he received a second telephone call from Attorney Makara's partner, Paul A. Bucco, Esq., advising that PSP would settle for $190,000. Cert. of Denis Serkin, Esq., ¶ 23.

## II. STANDARD

### A. Jurisdiction and Venue

This action was brought pursuant to the Miller Act to recover amounts alleged to be owed to the subcontractor and unpaid by the general contractor. Under the Miller Act "a civil action brought under this subsection must be brought . . . in the United States District Court for any district in which the contract was to be performed and executed." 40 U.S.C.A. § 3133. This contract was to be performed in New Jersey; therefore, jurisdiction and venue are proper.

### B. Choice of Law

State law governs the construction and enforcement of a settlement agreement in federal court. United States v. Lightman, 988 F. Supp. 448, 457 (D.N.J. 1997). The question of whether Plaintiff entered into an enforceable agreement with the Defendants shall be determined primarily by reliance upon New Jersey contract law. Id.

### C. Settlement Enforcement

Defendants, as the party seeking to enforce the alleged settlement agreement, have the burden of proving the existence of the agreement under contract law. Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475, 703 A.2d 9 (App. Div. 1997); see also Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990). Similar to the standard of review for a summary judgment motion, on

a disputed motion to enforce a settlement, the court must hold a hearing to resolve any dispute of material fact unless the available competent evidence, considered in a light most favorable to the non-moving party, is "so one-sided" as to render the hearing unnecessary. Amatuzzo, 305 N.J. Super. at 474-75. For the reasons now discussed, this Court finds that Defendants have met their burden and proved that the parties reached an agreement-in-principle for all material terms of the settlement agreement and no dispute of material fact exists. The Court further finds that Plaintiff has presented no compelling reason justifying its December 30, 2011 withdrawal from the agreement with Defendants. Accordingly, the agreement must be enforced.

Under New Jersey law, a settlement agreement between two parties is a binding legal contract. Nolan by Nolan v. Lee Ho, 120 N.J. 465, 577 A.2d 143 (1990) (internal citations omitted). Generally, New Jersey courts honor settlement agreements "absent a demonstration of fraud or other compelling circumstances." Id. at 472, 577 A.2d 143 (internal quotations omitted). Moreover, "if a settlement agreement is achieved through coercion, deception, fraud, undue pressure, or unseemly conduct, or if one party was not competent to voluntarily consent thereto, the settlement agreement must be set aside." Jennings v. Reed, 381 N.J. Super. 217, 227, 885 A.2d 482 (App. Div. 2005) (internal quotations omitted). However, "[b]efore vacating a settlement agreement, [New Jersey] courts require clear and convincing proof that the agreement should be vacated." Lee Ho, 577 A.2d at 146 (internal quotations omitted).

In the event the parties "agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1993). It appears to the Court that the

6

parties agreed upon the essential terms of the settlement and no clear and convincing reason exists to vacate the agreement.

## III. DISCUSSION

### A. Contract Formation

The December 27-29, 2011 correspondence between attorneys for Defendants and Plaintiff indicates that Plaintiff never signed the settlement agreement. Accordingly, before deciding whether the settlement agreement may be enforced against Plaintiff, the Court must determine whether Plaintiff and Defendants actually entered into an agreement. Under New Jersey law, a contract is formed where there is offer and acceptance and the terms sufficiently define that the performance to be rendered by each party can be ascertained with reasonable certainty. Lightman, 988 F. Supp. at 458. "The fact that a settlement agreement has not been memorialized in writing makes it no less a contract where the parties concluded agreement by which they intend to be bound." 16A N.J. Prac., Legal Forms § 54:89 (4th ed.). That contract is enforceable if the parties agree on all of the essential terms, and manifest an intention to be bound by those terms. Lightman, 988 F. Supp. at 458. Where the parties do not agree on one or more essential terms, however, courts generally hold that the agreement is unenforceable. See id.

In this case, Defendants contend that they promised to pay Plaintiff a sum of $180,000, and Plaintiff promised to relinquish any further claim against Defendants. However, whether the parties agreed on essential terms is in question, since Defendants have produced no agreement signed by Plaintiff, and since Defendants do not appear to have tendered the allegedly agreed-upon sum of $180,000 to the Plaintiff. Therefore, a question exists as to whether Defendants'

7

settlement offer grew into an enforceable agreement. As explained in Section III.C infra, it appears to the Court that because the parties agreed on all essential terms, a contract was formed and may be enforced against Plaintiff.

### B. Settlement Authority

Attorneys must be specifically authorized by the client to settle a case; otherwise, the consent of the client is necessary. Amatuzzo, 305 N.J. Super. at 475. Likewise, negotiations of an attorney are not binding on the client unless the client has expressly authorized the settlement or the client's voluntary act has placed the attorney in a situation wherein a person of ordinary prudence would be justified in presuming that the attorney had authority to enter into a settlement, not just negotiations, on behalf of the client. Id. (emphasis added); United States Plywood Corp. v. Neidlinger, 194 A.2d 730 (1963) (citing J. Wiss & Sons Co. v. H.G. Vogel Co., 86 N.J.L. 618, 621, 92 A. 360 (E. & A.1914)). Generally, an attorney is presumed to possess authority to act on behalf of the client, and the party asserting the lack of authority must meet "a heavy burden to establish that [an] attorney acted without any kind of authority." Jennings v. Reed, 381 N.J. Super. 217, 231, 885 A.2d 482, 490 (App. Div. 2005) (citing Sur. Ins. Co. of Cal. v. Williams, 729 F.2d 581, 582-83 (8th Cir.1984)).

Here, Plaintiff does not surmount that burden. Plaintiff admits in his own Memorandum that "[a]t the Settlement Conference, Pro-Spec authorized counsel to resolve its claims against Defendants in exchange for payment in the amount of $180,000." Pl. Mem. of Law ¶ 2. In this case, although Plaintiff did not manifest his acceptance of Defendants' offer by signing the agreement, Defendants have presented ample evidence that Plaintiff's attorney, David Makara,

8

Esq., had full settlement authority, and exercised that authority by accepting a written draft of the settlement agreement.

For example, Attorney Serkin certifies that on December 27, 2011, Attorney Makara advised him that the revised settlement agreement of December 23 was acceptable and would be signed. Cert. of Denis Serkin, Esq., ¶ 16. Plaintiff does not contest Defendants' assertion regarding Attorney Makara's acceptance of the agreement.

### C. The Parties Agreed on All Essential Terms

Although the parties exchanged several drafts of the agreement, Plaintiff has presented no evidence to suggest an agreement with Defendant was not formed by telephone on December 27, 2011, or to otherwise rebut these findings. Similarly, in Konner v. Hudson United Bank, 2005 WL 3954742 (N.J. Super. Ct. App. Div. Apr. 12, 2006), the court found that the authorized attorneys' agreement upon a settlement figure by telephone constituted a binding agreement. Likewise, it appears that Attorney Makara accepted the settlement agreement as last drafted by Attorney Serkin on December 23, 2011.

### D. Defendants' Settlement with Plaintiff Should Be Enforced

New Jersey courts "strain to give effect to the terms of a settlement wherever possible." Brundage v. Estate of Carambio, 195 N.J. 575, 601, 951 A.2d 947, 961-62 (2008); see Dep't of Pub. Advocate, 206 N.J.Super. at 528, 503 A.2d 331. Settlements will usually be honored "absent compelling circumstances." Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990). "An agreement to settle a lawsuit is a contract, which like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling

9

circumstances,' should honor and enforce as it does other contracts." Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1983).

As indicated in Section III.A, supra, Defendants have shown the existence of a valid settlement agreement with Plaintiff. Plaintiff has not offered any evidence or "clear and convincing proof" that this Court should vacate the settlement. Accordingly, this Court must enforce the valid settlement agreement between Plaintiff and Defendants.

### E. Attorneys' Fees and Costs

On January 30, 2012, Defendant filed a motion with the District Court to enforce settlement against Plaintiff and to order Plaintiff to pay Defendants' attorneys' fees. Defendants contended that Plaintiff "acted in bad faith, vexatiously and wantonly in refusing to sign the Settlement Agreement." Pl. Mem. of Law at 12. Further, Defendants allege that Plaintiff attempted to "extort additional settlement funds from Parsons" by delaying the settlement. Pl. Mem. of Law at 12.

The general rule is that attorneys' fees and costs are not recoverable and, unless specifically authorized by statute, are awarded only in extraordinary cases. Alyeska Pipeline Service Co. v. The Wilderness Society, 421 U.S. 240 (1975). However, courts, in their discretion, may assess attorneys' fees for the willful disobedience of a court order or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Walther & Cie v. U. S. Fid. & Guar. Co., 397 F. Supp. 937, 946 (M.D. Pa. 1975) (citing F.D. Rich Co. Inc. v. Industrial Lumber Co., 417 U.S. 116 (1974)); see also Belfer v. Merling, 322 N.J. Super. 124, 144-45 (App. Div. 1999) ("When the plaintiff's conduct bespeaks an honest attempt to press a perceived, though ill-founded and perhaps misguided, claim, he or she should not be found to

have acted in bad faith," and the plaintiff's actions will not justify a fee award unless made "for the purpose of harassment, delay, or malicious injury.").

In Walther, attorneys' fees were, in fact, not awarded. In addition to finding that defendants had not disobeyed a court order, the Walther Court found that causing a plaintiff to seek enforcement of a settlement agreement does not amount to bad faith or vexatious, wanton, or oppressive behavior. Walther, 397 F. Supp. at 946.

Here, although Plaintiff effectively delayed the enforcement of the agreement, Defendants have not submitted proper proof that Plaintiff attempted to extort additional settlement funds. Pl. Mem. of Law at 12. Thus, this Court finds the award of attorneys' fees and costs inappropriate.

## IV. CONCLUSION

Because Plaintiff does not contest that Attorney Makara, as authorized counsel for Plaintiff, accepted the terms of the settlement agreement on December 27, 2011, no dispute of fact exists. For the foregoing reasons, Defendants' motion to enforce the settlement agreement with Plaintiff is **GRANTED**, and Plaintiff is ordered to sign and promptly deliver to Defendants the agreement releasing his claim against Defendants, in order to facilitate Defendants' payment of the agreed-upon settlement award. Defendants' motion for costs and fees is **DENIED.** An appropriate order shall issue today.


Date:  7/25/2012                                                                          /s/ Robert B. Kugler
                                                                                          ROBERT B. KUGLER
                                                                                          United States District Judge

11